WEST, RESPONDENT, v. CAPITAL TRUST & SAVINGS BANK ET AL., APPELLANTS

(No. 8,196.)

(Submitted November 24, 1941. Decided March 12, 1942.)

[124 Pac. (2d) 572.]

132

*Messrs. Murch & Wuerthner,* for Appellants, submitted an original and a reply brief; *Mr. C. W. Murch* argued the cause orally.

*Messrs. Hall & Alexander,* and *Mr. R. K. West (pro se),* for Respondent, submitted a brief; *Mr. H. C. Hall* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendants from a judgment in favor of

plaintiff in an action to quiet title to certain lands located in Toole county. The lands were patented to Joseph A. Stenson, and on April 7, 1920, Stenson and wife gave a mortgage on the land to the Capital Trust and Savings Bank of St. Paul, Minnesota, to secure a note in the sum of $1,000. In 1922 the Stensons conveyed the land to W. C. Pratt, and in 1923 Pratt conveyed the land to the Montana Giant Petroleum Company, which was the record owner when the Capital Trust and Savings Bank, hereafter referred to as Capital Trust, commenced an action to foreclose the mortgage.

The foreclosure proceedings were commenced June 22, 1927, and judgment was entered September 16, 1927. The land was regularly advertised for sale and sold to the Capital Trust for the amount of the balance due on the note with interest, taxes paid, expenses and attorney's fees. The complaint in the foreclosure proceeding, in addition to naming Stenson and his wife as defendants, also named the Montana Giant Petroleum Company, Monarch Lumber Company and Marshall-Wells Company, the last three named defendants being corporations. All of the defendants defaulted, and it does not appear that any attempt was made by any interested party to redeem the land.

In October, 1926, the Montana Giant Petroleum Company, which will hereafter be referred to as the Petroleum Company, executed a deed to one R. W. Seelye, which, it will be noted, was prior to the date that the Capital Trust commenced its foreclosure proceeding, but Seelye, did not record his deed until in April, 1936. February 7, 1936, deeded the land to the plaintiff West. February 8, 1936, the Capital Trust, by Robert D. Beery, Commissioner of Banks of the State of Minnesota, executed a deed to Dean Johnston, reserving, however, twelve and a half per cent., of the gas and oil in or under the land.

It will be noted that the contesting parties here each trace their titles back to the patentees of the land. The title of the Capital Trust is grounded on the sheriff's deed obtained after foreclosure of the mortgage, and the defendant Johnston is the grantee of the Capital Trust. The title of the plaintiff West

134

comes down from Stenson to Pratt, from Pratt to the Petroleum Company, from the Petroleum Company to Seelye, from Seelye to West. All the transfers beginning with Stenson and wife to Pratt, running down and including Seelye, were made subject to the $1,000 mortgage to the Capital Trust. Seelye conveyed to the plaintiff by a quitclaim deed, and no reference was made to any lien or mortgage against the land.

The complaint in the action at bar alleges title in the plaintiff from February 7, 1936, and is in the usual form in actions to quiet title. The Capital Trust and Dean Johnston answered separately, being represented by separate counsel. The cause was tried to the court sitting without a jury. The findings of fact were generally in favor of the plaintiff. Judgment was made and entered in his favor and the title to the land quieted in him.

The turning point in the case depends upon whether the judgment of foreclosure in the action brought by the Capital Trust appears from the judgment roll or from the allegations of defendants' answers to be invalid, and whether the judgment roll in the foreclosure action was properly received in evidence.

Section 9467, Revised Codes, in part provides: "No person holding a conveyance from or under the mortgagor of the property mortgaged, or having a lien thereon, which conveyance or lien does not appear of record in the proper office at the time of the commencement of the action, need be made a party to such action; and the judgment therein rendered, and the proceedings therein had, are as conclusive against the party holding such unrecorded conveyance or lien as if he had been made a party to the action." It is apparent from this section that if the judgment in the foreclosure action was valid, then it is conclusive not only against the Petroleum Company but also against Seelye whose deed was unrecorded when the foreclosure action was commenced, and also against plaintiff who obtained only the rights of Seelye.

Plaintiff contends that the judgment in the foreclosure action appears from the judgment roll and from the answers

of the defendants to be void for want of proper service of summons upon the Petroleum Company. The answers of the defendants Capital Trust and Dean Johnston contain these allegations: "That thereafter, summons in said action was duly and regularly issued and service thereof was made upon C. L. Walker, deputy secretary of state of the State of Montana, who thereafter, on July 16, 1927, mailed a copy of the summons and a copy of the complaint on file in said action by registered mail unto said Montana Giant Petroleum Company, a corporation; that thereafter, between July 21, 1927, and August 11, 1927, inclusive, an alias summons issued in said action was published once a week for four successive weeks in a newspaper of general circulation published weekly at Shelby, Toole County, Montana." They also contain this allegation: "That due and legal service of process and summons was made and had on each and all of the defendants last above named as parties defendant in said foreclosure action and none of said defendants appeared in said action and default was entered against each and all of said defendants for not having appeared within the time provided by law and set out in said summons."

The plaintiff contends that by alleging specifically the manner of obtaining jurisdiction in the foreclosure action defendants are limited by the special allegations and may not rely upon the general allegation that the judgment was duly made and given. We fail to see how that rule can apply here. It is only where the specific averments are inconsistent with the general allegations that the pleader is bound by the special allegations. (*Thomson* v. *Nygaard*, 98 Mont. 529, 41 Pac. (2d) 1). Here the special allegations of service do not show a want of jurisdiction but simply omit recitation of the fact that an affidavit was filed as required by statute authorizing service upon the Petroleum Company by service upon the secretary of state. The pleadings do not show that an affidavit was not filed.

It is conceded here that the attack upon the foreclosure decree is collateral. The rule is well established that on such an attack there is a presumption of jurisdiction over the

person of the defendant unless the contrary affirmatively appears from the judgment roll. (*E. J. Lander & Co.* v. *Brown,* 110 Mont. 128, 99 Pac. (2d) 216, 217; *State ex rel. Delmoe* v. *District Court,* 100 Mont. 131, 46 Pac. (2d) 39; *Coburn* v. *Coburn,* 89 Mont. 386, 298 Pac. 349; *Frisbee* v. *Coburn,* 101 Mont. 58, 52 Pac. (2d) 882; *Hanrahan* v. *Anderson,* 108 Mont. 218, 90 Pac. (2d) 494; *Burke* v. *Inter-State Savings & Loan Ass'n,* 25 Mont. 315, 64 Pac. 879, 87 Am. St. Rep. 416.)

This elementary rule is so well settled in this state that outside authorities need not be resorted to. However, the rule is so aptly stated in 34 C. J. 537 that it is well to repeat it here. It is there said: "In the case of a collateral attack upon a domestic judgment of a court of general jurisdiction by a party thereto every reasonable presumption is indulged to support the judgment, and the burden is upon a party collaterally attacking a judgment to establish its invalidity. It will be presumed in such a case that the court had jurisdiction both of the subject matter and of the person, and that all the facts necessary to give the court jurisdiction to render the particular judgment were duly found, except where the contrary affirmatively appears. These presumptions are indulged where the record, although failing to show jurisdiction affirmatively, yet does not distinctly show a want of jurisdiction, as where the record of a judgment of a court of general jurisdiction is silent as to the facts conferring jurisdiction, or is defective in consequence of the omission of proper recitals, or the loss or absence of parts of the record."

The decree of foreclosure recites that the cause came on regularly to be heard upon the complaint "taken as confessed by the above named defendants [Montana Giant Petroleum Company being one] upon whom and each and every one due and regular service of summons and complaint was made and due proof and returns of said service having been made and filed in this court." This recital in the judgment must on collateral attack be accepted as true, particularly if the judgment roll does not affirmatively show that the recital is false or unwar-

ranted. And where the judgment roll is silent as to the facts conferring jurisdiction, or where certain documents required by statute are absent from the judgment roll, the presumption still obtains. (*State ex rel. Delmoe* v. *District Court,* supra; 34 C. J. 540, note 78.)

If the allegations of the pleadings showed affirmatively a want of jurisdiction, then plaintiff's contention would be sound and there would be no presumption in favor of jurisdiction. The rule is stated in 34 C. J. 551, as follows: "Where the facts upon which a court assumes jurisdiction are recited in the record, and appear by it to have been such as would not in law confer jurisdiction, the judgment may be impeached collaterally; for in this case there can be no presumption, in aid of the judgment, that the recitals of the record are incorrect or incomplete, or that something was due which the record does not show to have been done, the whole record being taken together for this purpose. Thus, where the judgment recites that defendant was duly served with process, but the record shows that no service was made, or shows a service which is insufficient and unauthorized by law, it may be collaterally impeached."

The judgment roll in the foreclosure action does not affirmatively show a want of service of the summons upon the Petroleum Company, and it was properly received in evidence.

The judgment roll in the foreclosure action shows that service was had by service of the summons and complaint upon the deputy secretary of state, who mailed them to the corporation, and by publication of summons. True, the allegation in the answer in this case is that the summons was served upon the deputy secretary of state without mentioning the complaint, but it is also alleged, and the proof showed, that the deputy secretary of state mailed a copy of both the summons and complaint to the Petroleum Company; hence it sufficiently appears that a copy of the complaint was served upon the deputy secretary of state.

The contention is made by plaintiff that, since the record shows that a resident statutory agent was appointed by

the Petroleum Company and that his appointment had never been revoked, the service on the deputy secretary of state was unauthorized. This contention cannot prevail in the absence of a showing that the statutory agent was still residing in Montana when the service was made.

Plaintiff contends that certain other evidence was improperly received. We have given consideration to these questions. We cannot ascertain from the record whether the other evidence complained of was considered by the court. When it was offered, the court reserved ruling on the objection. It was not prejudicial to any right of plaintiff. Without that evidence defendants are entitled to prevail on collateral attack by virtue of the presumption of jurisdiction.

Plaintiff contends further that the deed from the Commissioner of Banks of the State of Minnesota to Johnston is not authenticated as required by section 10555, Revised Codes. This omission does not affect any right of the plaintiff. The point might have been raised by the Capital Trust, but the deed was introduced in evidence by that bank and Johnston jointly, and therefore the Capital Trust has waived its rights to object to the validity of the deed.

The judgment is reversed and the cause remanded with direction to enter judgment in favor of defendants.

Mr. Chief Justice Johnson and Associate Justices Anderson and Erickson concur.

Mr. Justice Morris:

I dissent. The plaintiff made out a prima facie right to have his title quieted. The defendants, instead of standing on the judgment in foreclosure by the Capital Trust, elected to plead specially and attempt to prove the proceedings in the foreclosure action. Such proceedings developed defects not apparent on the face of the judgment roll, and in the attempt to remedy such defects sought and succeeded in having the judgment roll introduced in evidence over the objections of the plaintiff, thus combining the judgment roll and their case grounded upon the

special pleading in order to sustain their cross-complaint to quiet title. This constituted a procedure which appears to me to be in conflict with the rule laid down by this court in *First National Bank* v. *Grow*, 57 Mont. 376, 188 Pac. 907; *Zozel* v. *Kohrs*, 72 Mont. 564, 577, 234 Pac. 1089; and *Thomson* v. *Nygaard*, 98 Mont. 529, 41 Pac. (2d) 1, which is to the effect that a special pleading governs a general one, and to plead the rule against attacks upon judgments fair on their face rendering them immune from collateral attack is a general plea. In the *Nygaard Case* the general and special pleas were found to be not inconsistent, but by reason of the proof made in the case at bar showing defects in the foreclosure proceedings, the defendants having elected to stand upon their special plea, the general plea is deemed abandoned.

The defects in the proof made under the special pleadings consist chiefly in failure to introduce the affidavit for the order for publication of summons; failure to introduce the affidavit of publication of alias summons, and serving summons on the assistant secretary of state while there was written authority in the files of the office of the Secretary of State, giving the name of a party resident at Kevin, Montana, authorized to accept service for the Petroleum Company, in whom title rested when the foreclosure action was commenced. Under the rule mentioned, the pleader may not ground his case on both a general and special plea.

The majority would cure these defects by resorting to presumptions. In actions to quiet title one must depend upon the strength of his own title without regard to the weakness of the title of his adversary. This universal rule necessarily makes it incumbent on one who seeks to clear his title in quiet title actions affirmatively to plead and prove all the essentials to show good title, and such proof must be grounded upon established facts; presumptions are merely inferences drawn from facts proved, (sec. 10602, Rev. Codes), and have no part in such actions.

Section 9484, Revised Codes, referring to the affidavit for order for publication of summons under section 9483, provides

that "the facts constituting due diligence shall be set out in said affidavit." I seriously doubt if the mere recital in the affidavit to the effect that no representative of the Petroleum Company could be found in Montana constitutes the "due diligence" mentioned in the statute. If the affidavit had recited that inquiry had been made at Kevin for the purpose of locating the Montana representative of the Petroleum Company and he could not be found, I think that would have been sufficient.

Defendant Johnston derived his title to the land and 87½ per cent. of the oil and gas ostensibly from the Superintendent of Banks of the State of Minnesota, but the name of the superintendent was apparently signed by a deputy, who also took the acknowledgment to the deed. To approve title derived from such a transaction is, in effect, to take judicial notice of the deputy's authority to execute such an instrument on the strength of the mere recital therein that the deputy "was thereunto duly authorized."

I decline to join in a decree of this court giving Mr. Johnston's title a clean bill of health on such emblems of title. The case should be remanded for further proceedings.

## ON MOTION FOR REHEARING

### (Filed April 6, 1942.)

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff's motion for rehearing is based upon the assertion that we failed to consider proof in the record showing affirmatively a want of jurisdiction in the foreclosure action. The evidence in question is an abstract of title offered by defendants and objected to by plaintiff upon the ground that no foundation had been laid for its admission, that many entries contained in it were incompetent, irrelevant and immaterial, and that the exhibit was hearsay. The court overruled the objection to the exhibit, stating that if the court finds that it is subject to the objections it would be disregarded. The exhibit did not contain

the signature of the abstract company by which it purports to have been prepared. It was unsigned.

Plaintiff contends that since the exhibit was offered by defendants, and since there are circumstances indicating that the court considered it, we are not at liberty to ignore it. He asserts that it affirmatively shows a want of jurisdiction in the foreclosure action, and that being so, the presumption of jurisdiction cannot be relied on to sustain the judgment.

In considering the motion for rehearing we may assume, without so deciding, that the defendants are bound by the evidence so offered by them and received over plaintiff's objection. We do not agree with plaintiff that it shows a want of jurisdiction in the foreclosure action. On the contrary, it shows that the court did have jurisdiction, The abstract of title contains an affidavit reciting: "C. W. Murch, being first duly sworn, on his oath deposes and says: That he is one of the attorneys for the plaintiff in the above entitled action; that said action above set forth is one for the foreclosure of a real estate mortgage made, executed and delivered by the defendants Joseph A. Stenson and Kalma Stenson, his wife to the plaintiff herein, and which said action is now pending in the above entitled court, and is one arising within the State of Montana; that affiant is personally acquainted with the facts upon which said action is based and that plaintiff has good cause of action upon the merits against each and all of the defendants named in the above entitled action; that said defendant, Montana Giant Petroleum Company, is a foreign corporation organized and existing under and by virtue of the laws of the state of Washington, and a copy of its charter has been filed in the office of the Secretary of State of the state of Montana and said corporation is authorized and qualified to do business within the state of Montana; that said defendant, Montana Giant Petroleum Company, a corporation, is a necessary and proper party to the above entitled action; that affiant is unable to locate the President or other Head, Secretary, Cashier, Managing or business agent of said corporation, agent appointed to receive service of process by said

corporation, or any of the officers or directors thereof, and none of said persons, officers and directors can be found within the state of Montana upon whom service of process in the above entitled action can be made.''

An affidavit substantially in the language of the statute is sufficient. (*Ervin* v. *Milne*, 17 Mont. 494, 43 Pac. 706.) It is to be noted that the rule is different in actions to quiet title. (Sec. 9484, Rev. Codes; *Aronow* v. *Anderson*, 110 Mont. 484, 104 Pac. ▆▆ (2d) 2.) Plaintiff contends that the above affidavit was not in the statutory form and did not cover the matters required by section 9112, Revised Codes. In considering this contention we must read section 9112 in conjunction with section 9111. (*Rothrock* v. *Bauman*, 73 Mont. 401, 236 Pac. 1077.) Section 9111, in prescribing how a foreign corporation may be served with summons, states: ''2. If the suit is against a foreign corporation, or a non-resident joint stock company or association, doing business and having a managing or business agent, cashier, or secretary within this state, to such agent, cashier, or secretary, or to a person designated as provided in section 6652 of the civil code.''

The affidavit, it will be noted, negatived the existence of any of such persons in the state as are named in subdivision 2 of section 9111, and was sufficient unless section 9112 requires something further. Before service may be made upon the Secretary of State under section 9112, there must be an affidavit negativing the existence of others in the state upon whom service could be had. The affidavit, according to section 9112, must negative the existence in the state of ''the president or other head, secretary, cashier, or managing agent of such domestic corporation, or the business agent, cashier, secretary, or agent appointed to receive service of process by such corporation organized under the laws of any other state or country, *or any clerk, superintendent, general agent, cashier, principal director, ticket agent, station-keeper, managing agent, or other agent, having the management, direction, or control of any property of any corporation doing business in this state.*''

The affidavit in question here met all of the requirements of the statute except the portion in italics. The question then is: What is meant by that portion of section 9112 in italics? It is our view that if any one or more of the persons enumerated in the portion in italics were within the state of Montana at the time service was had upon the Secretary of State, service of summons could not have been had upon such person or persons unless they also came within the class of those enumerated in subdivision 2 of section 9111. In *Rothrock* v. *Bauman,* supra, it was held that the only persons upon whom service of process could be had for a domestic corporation are those enumerated in subdivision 1 of section 9111. Likewise, and for the same reason, the only persons upon whom service could be had for a foreign corporation are those named in subdivision 2 of section 9111. If the legislature desires to change the law with respect to those upon whom service of process may be had for a foreign corporation, it must amend subdivision 2 of section 9111. The italicized portion of section 9112 may be disregarded when the affidavit negatives the existence within the state of those persons enumerated in subdivision 2 of section 9111 upon whom service might be had as does the affidavit here. That part of section 9112 in italics can be accounted for only by a misconception on the part of the legislature as to who may be served with process in behalf of a foreign corporation. Certainly it does not constitute an amendment of subdivision 2 of section 9111 so as to authorize service upon those persons named in the italicized portion of the statute if they were within the state. If they could not be served if within the state, then it is pointless to show in the affidavit that there are none such within the state.

The affidavit in question here complied with the statute in negativing the existence within the state of persons named in subdivision 2 of section 9111 upon whom the legislature authorized the service of process for a foreign corporation, and hence authorized service upon the deputy Secretary of State.

The motion for rehearing is denied.

144

Mr. Chief Justice Johnson and Associate Justices Erickson and Anderson concur.

Mr. Justice Morris:

My views are expressed in my dissent from the original opinion.