ROSS, APPELLANT, v. FIRST TRUST & SAVINGS BANK, ET AL., RESPONDENTS.

No. 8874

Submitted January 21, 1949. Decided July 13, 1949.

208 Pac. (2d) 490

Mr. P. F. Leonard, Miles City, and Mr. F. F. Haynes, Forsyth, for appellant. Mr. Haynes argued orally.

Mr. W. B. Leavitt, Miles City, for respondents Dennis and Smith, Mr. Robert E. Purcell, Jordan, for respondent Garfield County. Mr. Leavitt argued orally.

Mr. Ralph J. Anderson, Helena, Amicus Curiae.

THE HON. F. S. P. FOSS, District Judge, sitting in place of Mr. Justice Bottomly, disqualified:

This is an appeal by plaintiff Harry B. Ross from a decree quieting title in the defendants William W. Dennis and Henry C. Smith to certain described real property situate in Garfield county, Montana.

The trial court held the tax deed under which plaintiff claimed title to be void. The record discloses that the lands involved on this appeal became tax delinquent and in 1929 were the subject of a tax deed proceeding.

In May 1936 the defendant Garfield county made application for a tax deed and thereafter in the same year a tax deed issued to the county.

In July 1936 defendants Dennis and Smith entered into a contract with the county for the purchase of a portion of the lands involved. Thereafter such contract was cancelled for the failure of defendants to make the stipulated payments.

On June 1, 1942, the county by quit claim deed conveyed the lands to plaintiff Ross who, on December 16, 1944, instituted this action to quiet title.

1. Plaintiff contends the trial court erred in holding the affidavit filed with the county treasurer on the issuance of the tax deed jurisdictional and void. The affidavit failed to set forth the requisite statements as to notice and occupancy and in that respect is practically the same as the affidavit considered

by this court in the recent case of Lowery v. Garfield County, 122 Mont. 571, 208 Pac. (2d) 478, 1 St. Rep. 260, and, on the authority of that case and the decisions therein cited, the district court correctly held the affidavit to be jurisdictional and the tax deed issued without the requisite showing as to notice and occupancy, void.

2. Plaintiff contends the trial court erred in holding that defendants were not barred under the provisions of Chapter 100, Laws of 1943, and in holding the defendants had a right to file their cross complaint and therein challenge the validity of the tax deed. In the Lowery Case, supra, this court held unconstitutional the provisions of Chapter 100, Laws of 1943, upon which plaintiff relies and which he contends bars defendants from challenging in this action the validity of the tax deed, and again upon our holding in the Lowery Case and upon the authorities therein cited, the trial court's conclusion and holding is sustained.

3. Plaintiff contends that the trial court erred in concluding and holding that defendants were not estopped from attacking the tax deed by reason of the fact that, at public sale, they entered into a contract to purchase from the county a portion of the lands covered by the tax deed and to pay therefor in stipulated installments pursuant to which they thereupon entered into possession.

The general rule is that a vendee is estopped from attacking the validity of the title of the vendor while in possession.

In 55 Am. Jur., at pages 801-803, "Vendor and Purchaser," it is said: "The vendee in a contract for the sale of land, having recognized the vendor's title by entering into the contract and taking possession under it, can do nothing to the prejudice thereof *so long as the relation exists;* he is estopped to deny the vendor's title *without having first surrendered the possession,* * * *" (Sec. 375, p. 801). "It is obtaining the possession from the vendor under and on the faith of the contract to purchase the land which creates the estoppel against the vendee to deny the title of his vendor; it follows, therefore, that *if the purchaser*

*restores the possession to the vendor both parties stand remitted to their original rights and the estoppel ceases.''* Sec. 378, p. 803, emphasis supplied.

In 66 C. J., Vendor and Purchaser, sec. 780, p. 1033, it is said: ''The rule does not apply where the purchaser is not in possession under and by virtue of his contract with the vendor * * * or, although he came into possession under the vendor, he has surrendered possession of the premises, or has been evicted therefrom.''

In 25 Cal. Jur., Vendor and Purchaser, sec. 168, p. 689, it is said: ''Since the estoppel has its origin in the contract, its operation is limited to the title in reference to which the contract is made; it does not extend to the right of possession, and a purchaser is not estopped to show that, without fault or fraud on his part, the vendor's title has expired.''

Kerr v. Small, 112 Mont. 490, 117 Pac. (2d) 271, 273, is in point. There, as in the instant case the title owner of the land contested the validity of the tax deed (which tax deed was declared void) and when the land was sold at public sale had an agent bidding on the property covered by the tax deed. The question of estoppel was presented and the court said: ''In this case it must be remembered that at the time of the public auction the county had taken steps to cut off all equity which the tax delinquent owner had. In other words, under the statute, the last time an owner may redeem his property is before the taking of the tax deed. After that deed is taken and the statute followed, the previous owner is precluded from further rights as an owner. Therefore, when the plaintiff's agent presented himself at the sale, he was in the same status as any other buyer; he was possessed of no rights which he could waive by bidding on the property.'' In Smith v. Babcock, 36 N. Y. 167, 93 Am. Dec. 498, the court in deciding the question of whether or not the defendant was estopped from attacking the title of the plaintiff where a contract for the sale of real property had been entered into said: ''A party in possession of premises * * * is certainly estopped * * * from denying the title of his vendor. * * * This is upon the

principle that he shall not use the possession acquired from an apparent owner to the injury of such owner. Whenever, therefore, the tenant surrenders possession to the lessor, or his term expires, the rule no longer applies; but he is at liberty to assert his right, without the consent of the lessor * * *. Having given up the advantage of the possession received under a claim of title, he is no longer subject to its disabilities. * * *

"* * * at the time the action was brought, Mrs. Herrick (purchaser of real property by contract) had abandoned the possession, and the plaintiff had resumed it. * * * She had yielded what she had received from the plaintiff, to-wit, the possession, and both parties stood remitted to their original rights."

In distinguishing a quotation taken verbatim from 27 R. C. L., p. 547, which announces a general rule that where a purchaser who has been let into possession by his vendor, buys in a paramount outstanding title, he cannot set up against the vendor unless he first makes a bona fide surrender of the possession, the Supreme Court of Washington in Slocum v. Peterson, 131 Wash. 61, 229 Pac. 20, 23, 40 A. L. R. 1071, said: "A critical examination of this quotation and the authorities upon which it is rested, will show, we think conclusively, that this view of the law has no application, except where the purchaser has gone into possession of the land under the sale contract. * * * because his remaining in possession under the sale contract is wholly at variance with the rescission of or the non-existence of such contract, and the purchaser will, while in such possession, no more be permitted to so challenge or impair the title of his vendor with a view of defeating the vendor's title than a tenant in possession will be permitted to challenge or impair the title of his landlord. The industry of counsel has not brought to our attention a single decision of any court of this country, and we think there is none, wherein it has been held that an adverse title acquired by a contract purchaser of real estate was held by him in trust for his vendor; except where he, the purchaser, had gone into and was holding possession under the terms of the sale contract; or possibly where, the sale contract remaining in full force and effect,

by agreement, the vendee, though not in possession, was to acquire some adverse title, and had acquired such title, in aid of the vendor's title as part of the consideration for the conveyance to be made by the vendor." Citing numerous cases.

The estoppel arises from the purchaser having obtained his possession of the land on the faith of the contract. Clee v. Seaman, 21 Mich. 287.

In the instant case, defendant Garfield county cancelled its contract with defendants for the sale of the lands involved, regained possession thereof and sold to plaintiff Ross who immediately entered into possession and continued in possession until he filed this action. Upon cancellation of the contract and repossession of the property by the county and its grantees the defendants Dennis and Smith were remitted to their original status—that of any other buyer and they had no rights which could be waived by becoming purchasers of the property. Hence they were not estopped from asserting title nor from challenging the validity of the tax deed. Campbell v. Everhart, 139 N. C. 503, 52 S. E. 201; Kerr v. Small, supra.

Plaintiff contends that the defendants attacking the tax deed could not redeem only a portion of the lands but that they must redeem all or none. Piecemeal redemption is not only favorably regarded but is specifically provided for.

Section 2211, R. C. M. 1935, as amended by Chapter 17, Laws of 1941, provides: "Whenever any person * * * shall desire to redeem from a tax sale and pay all subsequent taxes upon any lots, piece or parcel of real estate, which said person * * * shall own or hold a mortgage or any other lien against * * * it shall be the duty of the county treasurer of the county in which such real estate is situated to permit such redemption and payment; and in case the said real estate shall have been assessed and sold, together with other real estate * * * then it shall be the duty of said county treasurer to compute and apportion the tax that should have properly been assessed against the said real estate sought to be redeemed, and upon which the taxes are sought to

be paid, the same as if said property had been separately assessed. * * *''

This action was instituted by the plaintiff for the purpose of quieting title to all of the lands described in the complaint. It was incumbent upon the plaintiff to rely upon the strength of his own title and not the weakness of that of his adversary, and when his title failed and the defendants proved a superior title to a portion of the lands covered in the tax deed the defendants became entitled to a judgment quieting title to that portion of the lands in which they established superior rights. Defendants, not having offered to redeem all of the land covered by the tax deed, were entitled to have title quieted in that portion of the lands which they had offered to redeem. Borgeson v. Tubb, 54 Mont. 557, 172 Pac. 326; Bentley v. Jenne, 33 Wyo. 1, 236 Pac. 509; Smith v. Whitney, 105 Mont. 523, 74 Pac. (2d) 450; Aronow v. Bishop, 107 Mont. 317, 86 Pac. (2d) 644.

*The Pleadings.* By his complaint plaintiff Ross seeks to quiet title to lots 1, 2, 3, and 4, of Section 4, Township 16 North, Range 41 East, M. P. M., and the east half of the southwest quarter and the southwest quarter of the southwest quarter of section 32, Township 17 North, Range 41 East, M. P. M., and certain other lands not involved on this appeal, alleging that defendants assert unfounded claims or interests therein adverse to plaintiff's title.

April 25, 1945, the defendants Henry C. Smith and Jane Smith, his wife, and William W. Dennis and Jane Dennis, his wife, filed an answer and cross complaint. In their answer they deny that plaintiff or any of the defendants other than themselves have any interest in the land specifically described above and allege ownership and the right to immediate and exclusive possession in themselves. In their cross complaint said defendants allege ownership in themselves; that defendant Garfield county claims an adverse interest, which claim is inferior to their title; that they offer to pay and discharge all taxes and other assessments that may be due to defendant county on said lands, and pray that plaintiff and the defendant Garfield county be required to set forth their claims to the lands including any

asserted right, title or interest therein; that plaintiff take nothing by his action and that title be quieted in the answering defendants and cross complainants.

The defendant county answered the cross complaint, denying the interest and ownership claimed by the defendants Smith and Dennis; disclaiming any title to the lands and alleging that the county had theretofore conveyed all its title to plaintiff by quit claim deed for a valuable consideration prior to the commencement of this action.

Plaintiff answered the cross complaint, denying the claimed ownership of the defendants Smith and Dennis and alleging that the lands were duly assessed for the year 1929 and subsequent years; that the taxes thereon for 1929 became delinquent and that the lands were duly advertised and sold to the county in the manner provided by law and tax certificate issued therefor; that no redemption being made, the county gave notice of application for a tax deed, which notice was duly served on all persons entitled to be served; that upon due proof made to the county treasurer, the latter, on May 2, 1936, executed and delivered to the county a tax deed for said lands which was recorded on May 8, 1936, in the office of the county clerk and recorder; that since the execution and recording of the tax deed plaintiff and the county have been in exclusive, continuous and adverse possession of the lands; that on July 6, 1936, the county entered into an installment contract with the defendant Henry C. Smith for the sale to him of the lands; that Smith, failing to make the installment payments as provided, the contract was cancelled and terminated; that on June 1, 1942, after the termination of said contract plaintiff purchased the lands from the county receiving a deed therefor, which was recorded June 4, 1942, since which date plaintiff has been in the exclusive, continuous and uninterrupted occupancy and possession and paid all taxes levied and assessed against said lands; that defendants Smith and Dennis were barred by the provisions of Chapter 100, Laws of 1943, effective February 26, 1943, from attacking the validity of the tax deed and that they are estopped from attack-

ing the validity of such deed or from claiming title hostile and adverse thereto by reason of their contract with the county for the purchase of the land subsequent to the issuance of the tax deed.

Defendants Smith and Dennis filed an answer to plaintiff's answer to their cross complaint, wherein they deny that notice of the application for tax deed was made and aver that they did not file with the county treasurer legal or sufficient proof of service of the notice of application for tax deed; that the county treasurer did not have jurisdiction to issue the tax deed, but admit that the county agreed to sell the lands to defendant Henry C. Smith and that by virtue of such agreement he was in possession of the land for several years and paid the taxes thereon, and denied all other matters pleaded in plaintiff's answer.

The defaults of certain non-appearing defendants were entered. Thereafter the cause was tried on the issues presented by the aforesaid pleadings of plaintiff, and the defendants Smith, Dennis and Garfield county.

*Plaintiff's Proof.* At the trial plaintiff introduced in evidence the deed of June 1, 1942, from the county to plaintiff, and a tax deed dated May 2, 1936, from the county treasurer to Garfield county and testified that he, plaintiff, had been in possession of the lands since the execution and delivery of the deed to him; that the lands had been assessed to him and he had paid the taxes thereon; that he had repaired the fences, used the premises for pasturage, cut between 30 and 40 tons of hay thereon, and that he had also rented the land to one Isaacs who grazed sheep thereon. With this proof plaintiff rested.

*Defendants' Proof.* When the title to the lands here involved was in the United States government and part of the public domain, they were filed upon and included in the original homestead entry of defendant Henry C. Smith.

Smith testified: That he subsequently relinquished the lands here involved to his brother-in-law, the defendant William W. Dennis, who filed upon and thereafter proved upon same as a government homestead, receiving a government patent therefor;

that he and his brother-in-law William W. Dennis were for years partners in the livestock business and that they were such partners at the time the tax deed was issued as well as at the time of the trial using the lands involved herein together with additional lands for the grazing of their livestock and in their partnership business; that Dennis had never sold or conveyed the lands; that he was able, ready and willing to pay all taxes and assessments fixed or determined against same; that after the tax deed was issued to the county, defendant Smith in competition with plaintiff Ross bid in the land at public sale for the partnership of Smith & Dennis and entered into a contract with the county for the purchase of the land, making a cash down payment and agreeing to pay the balance in installments; that thereafter the contract was cancelled for non-payment of the installments called for and the land thereafter sold at private sale to plaintiff Ross.

Defendant Smith further testified that he and his partner Dennis were in possession of the lands for five years following the purchase from the county; that during such period they did not pay anything other than the cash down payment on the contract but that they did pay taxes on the land for two years after the time for performance had expired on their purchase contract and that the reason the payments were not made on the contract was that the defendants Smith and Dennis were not financially able to make them.

Through the county clerk and recorder defendants established that defendant William W. Dennis was the record owner of the land at the time tax deed was issued and such witness also identified the tax deed issued to Garfield county, the notice of application for tax deed and the affidavit of publication of the notice of application for tax deed, being the affidavit of proof of service of notice of application for tax deed filed in his office.

The county treasurer as a witness identified the tax deed issued by the county treasurer and the affidavit constituting the proof of service upon which the tax deed was issued, being the only affidavit of proof of service on file in the county treasur-

er's office and hence the sole basis on which the tax deed was executed. Such affidavit of proof of service of the application for tax deed wholly failed to state whether the lands were occupied or unoccupied or if occupied the name of the occupant thereof, being utterly and entirely silent as to the occupancy. The only reference to the said affidavit in relation to the service of notice of application for tax deed, omitting names and dates, is as follows: "That the postoffice address of ———— owner, mortgagee, assignee of mortgage, as disclosed by the records in the office of the County Clerk and Recorder of Garfield County, Montana, is Jordan, Montana. That on the 6th day of January, 1939, I deposited in the postoffice at Jordan, Montana, with postage prepaid thereon a registered letter addressed to said owner, mortgagee, or assignee, at his said postoffice address, containing a true and correct copy of the within notice of application for tax deed."

Defendants' evidence also showed that the lands were enclosed by fence prior to the time the tax deed was issued by the county and during the period of time that plaintiff Ross had possession.

*Findings and Conclusions.* After hearing all the evidence offered on behalf of the respective parties, the court made and filed written findings of fact and conclusions of law wherein it found:

That the taxes on the land for the year 1929 became delinquent and the land was sold therefor on December 28, 1929; that on May 1, 1936, the date whereon Garfield county made application for tax deed, defendant William W. Dennis was the record title owner of the property under patent issued him bearing date of May 3, 1929; that notice of application for tax deed was served upon defendant William W. Dennis as shown by the records in the office of the county clerk and recorder; that on May 2, 1936, the county treasurer executed and delivered tax deed for the lands; that prior to the execution of the tax deed there was filed in the county treasurer's office proof of service of notice of application for a tax deed by affidavit; that the said affidavit did not disclose whether the lands were occupied or unoccupied and

said proof of service did not show any service upon any occupant, if any; that neither the affidavits filed in the offices of the county clerk or county treasurer state whether the lands were occupied or unoccupied or if occupied the name of the occupant thereof and that each of said affidavits of proof of service is entirely silent as to the occupancy; that the only reference in said affidavits in relation to the service of the notice of application for tax deed is as quoted above; that on May 8, 1936, tax deed was recorded in the office of the county clerk and recorder; that on July 6, 1936, a contract of sale was duly made by the county with defendant Henry C. Smith, then a partner with his brother-in-law, the defendant William W. Dennis, on behalf of Smith & Dennis, wherein they agreed to buy the lands under said contract for a consideration of $350, payable $70 on execution of the contract and the balance in four equal annual installments with interest; that the partnership made the down payment of $70 but failed and neglected to make any further payment and the contract was cancelled; that thereafter on June 1, 1942, the lands were sold by the county to plaintiff Ross for $252; that the county reserved six and one-quarter percent royalty in all oil, gas and minerals therein; that prior to the application for tax deed the lands were vacant and unoccupied grazing lands but after the purchase thereof by Smith and Dennis defendant Smith took actual possession of the lands; that after June 1, 1942, plaintiff took actual possession of the lands and on June 4, 1942, recorded tax deed from the county; that Ross caused the lands to be fenced or the fences to be repaired and continuously since acquiring the property from the county has been in actual, open and adverse possession of the lands, paid all taxes thereon and has paid the county the full purchase price therefor; that plaintiff commenced this action December 16, 1944; that defendants Dennis and Smith appeared therein by demurrer on January 6, 1945, and filed their answer and cross complaint on April 11, 1945; that in their cross complaint, defendants state that they are willing to discharge and pay all taxes that may be due the defendant Garfield County and ask that title to the lands be

quieted in them; that defendants Dennis and Smith do not assert any claim to a portion of the lands covered by the tax deed and proceedings which were included in the contract of sale to the partnership, and that in the event the tax deed is set aside, said defendants are able, willing and have offered to pay all delinquent taxes, penalty and interest due on said lands.

There is evidence supporting each and all of the trial court's findings of fact although the defendant Smith testified that at the time the tax deed was taken he was using the homestead and additional railroad lands. The land was fenced and the fences in good condition and was not open range. This evidence is somewhat supported by the witness Harbaugh.

The judgment quieting title in the defendants Henry C. Smith and William W. Dennis, on the payment of interest, penalty and taxes, is affirmed.

Mr. Chief Justice Adair and Mr. Justice Freebourn, concur.

MR. JUSTICE ANGSTMAN (dissenting):

I agree that this case, so far as the validity of the tax deed is concerned, is governed by the case of Lowery v. Garfield County, decided June 24, 1949, but I was not able to agree with the majority in that case and for the reasons set forth in my dissenting opinion in that case I disagree with the majority in this case so far as it holds that the tax deed is invalid.

Like the Lowery Case, here too the property in question was vacant when the tax deed was applied for. Also here as there the affidavit recited that notice was served upon all parties interested, followed by the manner of service, by publication and registered mail to Dennis, the actual owner, which actually in effect negatived the existence of an occupant. Here as in the Lowery Case the owner of the land, Mr. Dennis, was properly served with notice of application for the tax deed. The land was vacant and unoccupied. No one else was entitled to notice. The statute was actually fully complied with in the giving of notice and the filing of proof thereof. Dennis and Smith are partners

and have been for many years and Smith has no greater rights than Dennis. I think the tax deed is valid.

Whether Chapter 100, Laws of 1943, has application in view of the fact that the plaintiff brought this action within two years after the enactment of that statute but where the validity of the tax deed was first questioned by the cross complaint filed after the two-year period named in Chapter 100, and whether the defense is barred by sections 9015 to 9026, R. C. M. 1935, pleaded in the reply, I express no opinion, since those questions are not considered in the majority opinion. To the extent that the majority have followed the holding of the Lowery Case on the validity and effect of Chapter 100 I disagree with it for the reasons set out in my dissenting opinion in that case.

On the question of estoppel I agree with the principle that a vendee is not estopped from attacking the validity of the title of the vendor after he has surrendered possession to the vendor, but the question before us is, may one buy property from another today and tomorrow be heard to say that he himself was the owner before he undertook to buy it. I agree however with the result announced in the majority opinion on the question of estoppel. The authorities support the view that a person is not estopped who is ignorant of matters of law as to "the formalities requisite for the validation of a transaction" or "the formalities requisite for the validity of procedural acts." 19 Am. Jur., "Estoppel," sec. 141, p. 795.

To say that defendants are estopped from questioning the validity of the tax title is to impute to them knowledge of the law relating to tax titles and knowledge of the procedural intricacies requisite to establish a valid tax title—subjects concerning which lawyers and judges trained in law and with the open books before them entertain widely divergent views. It would not be fair or reasonable to impute to a layman knowledge of the law on these subjects when not even lawyers and judges agree what it is.

I think defendants had the right to assume that the county acted properly in obtaining the tax title. The fact that they did

so and became the purchasers of the property ought not to prevent them from later asserting the invalidity of the tax title when shrewd counsel in their behalf explored the procedure followed and with the aid of powerful lens, uncovered what the majority of this court thinks was a jurisdictional defect in the proceedings. But since it is my opinion that the tax deed was valid I think the judgment should be reversed and the title quieted in plaintiff.

MR. JUSTICE METCALF:

I concur in the foregoing dissenting opinion of Mr. Justice Angstman.